FILED
2006 Jul-30  AM 11:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| FLOYD SOMERVILLE, | ) | |
| | ) | |
| DEFENDANT. | ) | Case No. CR04-C0-301-S |

## MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE
## AND INCORPORATED MEMORANDUM OF FACTS AND LAW

Defendant Floyd Somerville, through counsel, respectfully moves this Court, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct the sentence he received in this case. As grounds for his Motion, Mr. Somerville states as follows:

1. This Motion is based upon all the files, records and proceedings in this case.

2. On July 28, 2004, an indictment was filed against Mr. Somerville, charging him with possession of a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

3. On December 1, 2004, Mr. Somerville pled guilty, pursuant to a written plea agreement, to Count One of the indictment.

4. On March 22, 2005, Mr. Somerville was sentenced to a term of imprisonment of 210 months on Count One, followed by 60 months of probation with special conditions, a $100 assessment fee, and no fine.

5. On appeal, the United States Court of Appeals for the Eleventh Circuit affirmed the convictions in an unpublished opinion. USA v. Floyd Somerville, Appeal Number 05-12089-HH. A copy of the Opinion is attached. (Exhibit A)

6. There have been no petitions, applications, motions or proceedings filed or maintained by Mr. Somerville (with the exception of the direct appeal listed above) in any other federal court with respect to the judgment entered in this case.

7. For the reasons set forth below, Mr. Somerville prays that this Court set aside his convictions and sentence in this case

## MEMORANDUM OF FACTS AND LAW

## I. INTRODUCTION

Somerville challenges as illegal the sentence imposed upon him in the instant case, on the grounds that he was denied the effective assistance of counsel at trial when his counsel failed to object to hearsay introduced at trial, in violation of Mr. Somerville's rights under the Confrontation Clause of the Sixth Amendment.

In a § 2255 proceeding, factual findings are reviewed for clear error while legal issues are reviewed de novo. *Fernandez v. United States,* 941 F.2d 1488, 1491 (11th Cir. 1991); *Barrientos v. United States,* 668 F.2d 838, 841 (5th Cir. 1982).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

For Somerville to be successful in claiming ineffective assistance of counsel, he must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 686, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Somerville must show that his counsel's errors were so serious that he was, in effect, "denied a fair trial, a trial whose result is reliable." *Id.* The defendant must overcome a strong presumption that the challenged action "might be considered sound trial strategy." *Id.* at 689 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 100 L. Ed. 83, 76 S. Ct. 158 (1955)).

In considering Somerville's claims, the Court need not address both prongs of the Strickland test if Somerville makes an insufficient showing as to one. *United States v Hilliard,* 752 F.2d 578, 580 (11th Cir. 1985); *Weeks v. Jones,* 26 F.3d 1030, 1037 (11th Cir. 1995).

To prevail on an ineffective assistance of counsel claim, Somerville must show that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688-94, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Caderno v. United States,* 256 F.3d 1213, 1217 (11th Cir. 2001).

### A. Failure to Investigate and Prepare a Defense

Trial counsel failed to investigate this case and failed to prepare a defense for Somerville. Somerville was prejudiced by trial counsel's failure to investigate the case and failure to prepare a defense because if trial counsel had investigated this case he would have discovered witnesses available to testify that Somerville had no way of knowing there were firearms in the trunk of the vehicle he was driving.

Due to trial counsel's lack of investigation and lack of preparation of a defense for Somerville, trial counsel presented Somerville with no alternative but to plead guilty.

Trial counsel's recommendation lacked the benefit of adequate investigation into the facts of this case and failure to prepare a defense in the case.[1]

In order for the government to prove its case against Somerville under18 U.S.C. § 922(g)(1), the government had to show Somerville was in constructive possession of the firearms.[2] The evidence relied upon by the government shows that the firearms were discovered inside luggage and inside the trunk of the vehicle Somerville was driving when he was pulled over for a traffic violation by law enforcement.

There was at least one witness available to testify that the firearms in the trunk of the car Somerville was driving were the purchased by the witness the night before Somerville's arrest and that the witness left the guns in the trunk of the vehicle Somerville was driving at the time of his arrest. The witness would have also testified that, to his knowledge, Somerville was not aware of the firearms presence inside luggage inside the trunk of the car he was driving. (See Exhibit C Affidavit of Terry Colbert.) This witness, and potentially others, would have refuted the necessary element of constructive possession: knowledge of the item's presence. _United States v. Bell_, 954 F.2d 232, 235 (4th Cir. 1992).

There was actual prejudice in trial counsel's failure to investigate and prepare a defense on behalf of Somerville because witnesses could have testified and created doubt that Somerville had knowledge of the firearms. This doubt would negate any potential finding of guilt by a jury. Somerville was facing a sentence of at least fifteen years, based upon prior convictions, if he were to be convicted in this case. If trial counsel had discovered these exculpatory witnesses, trial counsel's recommendation to plead guilty would have been different.

The error of failing to investigate a case and failure to prepare a defense are so basic as to render trial counsel's actions ineffective. Trial counsel's failure to investigate the case and failure to prepare a defense were unreasonable because it fell below an objective standard of reasonableness.[3] In _Strickland v. Washington_, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), the Court held the Sixth Amendment imposes on counsel a duty to investigate, because reasonably effective assistance must be based on professional decisions and informed legal choices can be made only after investigation of options. Trial counsel gave Somerville no other option than to plead guilty.

Trial counsel's failure to investigate this case and failure to prepare a defense for Somerville satisfies one prong of the test set out in _Strickland v. Washington_, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984) because trial counsel's inactions and deficient performance prejudiced Somerville.

---

[1] Counsel can deprive a Defendant of the right to effective assistance of counsel simply by failing to render adequate legal assistance. Strickland v. Washington, 466 U.S. 668 (1984).

[2] The government presented no evidence that Somerville was in actual possession of the firearms, therefore the only way to prove possession was to show evidence of constructive possession of the firearms.

[3] Chandler v. United States, 218 F.3d 1305 (2000).

A claim of ineffective assistance of counsel by Somerville should prevail because both prongs of *Strickland* have been met.

## B. Motion to Suppress

Trial counsel failed to argue or elicit testimony during the Motion to Suppress hearing held on October 13, 2004 that would have produced testimony likely to result in the suppression of the evidence in this case. A valid basis existed to suppress evidence and trial counsel was ineffective for failing to pursue such a basis.

First, trial counsel failed to argue or elicit testimony during the Motion to Suppress hearing that addressed whether or not Somerville was properly mirandized.[4] This failure by trial counsel satisfies one prong of *Strickland* because counsel's conduct fell below an objective standard of reasonableness and therefore violated Somerville's right to effective counsel under the Sixth Amendment. If all of Somerville's statements made at the traffic stop had been suppressed, the government would likely have failed to prove their case beyond a reasonable doubt to a jury. Somerville's statements were the only evidence of Somerville's alleged knowledge of the firearms.

Second, trial counsel failed to argue or elicit testimony during the Motion to Suppress hearing that addressed the constitutionality of police questioning Somerville regarding the luggage in the trunk. This prejudiced Somerville because if such testimony had been elicited, the evidence may have been suppressed.

Somerville allegedly made a statement that the luggage in the trunk belonged to him, but did so only after questioning by the police officers. Failing to challenge or refute a clearly prejudicial statement at a hearing in which other statements were successfully suppressed based on police questioning was unreasonable and prejudicial to Somerville. Allowing Somerville's statement after police questioning that the luggage was his into evidence without any challenge prejudiced Somerville because his statement supported the government's claim of constructive possession.

Third, trial counsel failed to make written objections to the Magistrate Judge's Report and Recommendation in regard to the motion to Suppress hearing. Trial counsel's failure to make written objections to the magistrate's partial denial of Somerville's motion to suppress barred Somerville from attacking the magistrate's factual finding on appeal. Trial counsel's failure to preserve issues for appeal was unreasonable and prejudicial to Somerville.

These failing by trial counsel amount to ineffective assistance of counsel under *Strickland* because it was unreasonable not to seek to suppress parts of Somerville's statements to law enforcement and it was unreasonable not to make written objections to the magistrate's partial denial of Somerville's motion to suppress. Somerville was prejudiced by these failings because if all of Somerville's statements to police had been suppressed,

---

[4] The magistrate who heard the Motion to Suppress commented on this failure by trial counsel in his Report and Recommendation, attached as Exhibit B.

the government would not have been able to prove the element constructive possession and Somerville could have proceeded to trial with a good chance of being found not guilty. Likewise, Somerville was prejudiced by trial counsel's failure to make written objections to the magistrate's partial denial of Somerville's motion to suppress because if trial counsel had done so, this issue would have been preserved for appeal.

The first statement in Somerville's motion to suppress, that Somerville "was taking the guns to Birmingham" was not suppressed by the magistrate. Absent this statement by Somerville, the government had little, if any, evidence that Somerville was in constructive possession of the firearms.

Failing to challenge the magistrate's partial denial of Somerville's motion to suppress constituted ineffective assistance of counsel because trial counsel's conduct fell below an objective standard of reasonableness and actually prejudiced Somerville, satisfying both prongs of _Stickland. See Also Owens v United States_ (2004, CA7 Ind) 387 F3d 607.[5]

## CONCLUSION

Pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings, Mr. Somerville requests that an evidentiary hearing be conducted at which proof may be offered concerning the issues raised in his motion and memorandum. After an evidentiary hearing is held, the Court should vacate Mr. Somerville's convictions and sentence, and permit him to withdraw his guilty plea, and to file a motion to suppress tangible evidence, or grant such other and further relief as it deems appropriate.

Respectfully submitted this the 25th day of July, 2006,

**JOHN A. BIVENS, P.C.**

-S- John A. Bivens

**JOHN A. BIVENS (BIV002)**
**E-Mail: biv002@juno.com**
**Attorney for Defendant**
**2616 8th Street**
**Tuscaloosa, AL. 35401**
**(205) 759-5401**

---

[5] In appeal from denial of inmate's 28 USCS § 2255 motion to set aside inmate's drug conviction and sentence on ground that his trial lawyer was ineffective in arguing motion to suppress evidence seized pursuant to warrant to search inmate's house, court agreed that counsel was ineffective in arguing what should have been successful motion to suppress; court overruled its prior decision in Holman v. Page, 95 F.3d 481 (7th Cir. 1996), which held that failure to make U.S. Const. amend. IV objection to admission of evidence could not amount to ineffective assistance of counsel under U.S. Const. amend. VI if evidence was reliable.

## <u>CERTIFICATE OF SERVICE</u>

This is to hereby certify that I have served a copy of the foregoing **MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE** upon the Hon. William O. Simpson, Special Assistant United States Attorney, 1901 Fourth Avenue, North, Birmingham, Alabama 35203-2101, by placing sufficient postage and placing it in the United States Postal for mailing.

**Hon. William Gott Simpson**          205/244-2001
**Special Assistant United States Attorney**
**1901 Fourth Avenue, North**
**Birmingham, Alabama 35203-2101**          Email:<u>bill.simpson@usdoj.gov</u>


**Hon. Joyce Vance**          205/244-2001
**Special Assistant United States Attorney**
**1901 Fourth Avenue, North**
**Birmingham, Alabama 35203-2101**


**Hon Bart Slawson, Esq.**          205/870-1997
**Attorney at Law**          Fax:   205/324-3784
**1776 Independence Court**
**E-Mail:** <u>bartslawsonlaw@bellSouth.net</u>
**Birmingham, Alabama 35216**


**UNITED STATES PROBATION OFFICE**
**Hugo Black Courthouse, Room 101**          205/278-2100
**1729 Fifth Avenue, North**
**Birmingham, Alabama 35203**
**Email:<u>alnppdb-cmecf@alnp.uscourts.gov</u>**

-S- John A. Bivens
_____
**JOHN A. BIVENS**

**Exhibit A**

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

> FILED
> U.S. COURT OF APPEALS
> ELEVENTH CIRCUIT
> MAY 18, 2006
> THOMAS K. KAHN
> CLERK

No. 05-12089
Non-Argument Calendar

D. C. Docket No. 04-00301-CR-2-LSC-JEO

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FLOYD SOMERVILLE,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Alabama

(May 18, 2006)

Before BLACK, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Floyd Somerville appeals his conviction for possession of a firearm by a

convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  On appeal, Somerville argues that he received ineffective assistance of defense counsel in connection with his guilty plea, pointing to what he asserts are numerous errors committed by his defense counsel.  Somerville does not raise any other issues.

"We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record.  If the record is sufficiently developed, however, . . . [we] will consider an ineffective assistance of counsel claim on direct appeal."  United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002) (citations and quotation marks omitted).  The preferable means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion, "even if the record contains some indication of deficiencies in counsel's performance."  Massaro v. United States, 538 U.S. 500, 504-05, 123 S. Ct. 1690, 1694 (2003).

The record is not sufficiently developed to allow us to review Somerville's claims of ineffective assistance of counsel, particularly as Somerville attempted to offer evidence of the ineffective assistance into the record for the first time on appeal.  The means for Somerville to raise those claims is through a § 2255 motion.  Accordingly, we do not address his ineffective assistance claims and affirm his conviction.

**AFFIRMED.**

2

**Exhibit B**

FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

04 OCT 22 PM 2: 35

U.S. DISTRICT COUR
N.D. OF ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 04-CO-0301-S |
| | ) | |
| FLOYD SOMERVILLE | ) | |

OCT 22 2004

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on the defendant's motion to suppress the weapons that were seized and the oral statements made by the defendant after Bessemer Police Officers conducted a search of the vehicle he was driving. (Doc. 5). As will be discussed in detail below, the court finds that the motion is due to be granted in part and denied in part.

## BACKGROUND

### Procedural Component

The defendant was indicted on July 28, 2004, on the charge of possessing various weapons after being convicted of felonies, in violation of Title 18, United States Code, Section 922(g)(1). (Doc. 1, Count One). The United States included a section in the indictment alleging "special findings" to comport with *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531, 159 L. Ed. 2d 2103 (2004). The defendant filed a motion to suppress the seizure of the weapons by the law enforcement officers following what he deems to be an illegal stop, search, and seizure. (Doc. 5). His motion also seeks to have the court suppress the statements he made to the officers following his arrest. A hearing on the motion was held before the undersigned magistrate judge commencing on October 13, 2004.

### Facts

The evidence in this case really is not disputed. On July 8, 2004, Bessemer Police Officer

23

Ernest Ryan conducted a traffic stop on Interstate 20/59, after he observed the driver of a vehicle, later identified as the defendant, Floyd Somerville, following too closely behind a tractor trailer and veering off the roadway. Also in the car was a female passenger named Niya S. Haynes.

Officer Ryan asked Somerville for his driver's license. The defendant said that he thought his license was in the back seat; so he got out of his car to look for it. When Somerville was looking in the back seat for his wallet, Officer Ryan noticed a bulge in Somerville's back pocket, and, consequently, performed a brief pat-down for weapons. The object was determined to be Somerville's wallet. The defendant removed the wallet from his pocket and produced a New York driver's license. Ryan determined that the licence had been suspended. The defendant explained that the suspension had resulted merely from his failure to pay child support in the State of New York.

Officer Ryan returned the license to Somerville, gave him an oral warning, and advised him that he was free to go. The defendant and the passenger started to return to their vehicle when Ryan asked them if there were any weapons or drugs in their vehicle. They indicated that there were no such items in the car. Ryan then asked for permission to search the car for any guns and drugs. Haynes immediately stated that Ryan could search. According to Ryan, the defendant agreed and said "yeah" and further consented by nodding his head.

About this time, a second patrol officer, Christian Clemons, arrived at the scene to "back-up" Officer Ryan and to assist in the search. As the search was about to get underway, the defendant informed Ryan that the trunk could not be accessed from the outside; so, he lowered a portion of the back seat, reached through the opening, and manually unlocked the trunk. Inside the trunk, officers found some luggage. Somerville told Ryan that the luggage belonged to

2

him. Inside the luggage, Officer Clemons discovered four (4) handguns and some ammunition. An NCIC examination revealed that one of the weapons was stolen from Tuscaloosa, Alabama. When Ryan learned that one of the firearms had been reported stolen, the defendant was placed under arrest for Receiving Stolen Property. After being handcuffed and as he was being taken to the patrol car, the defendant remarked that he was "taking the guns to Birmingham."

The defendant was placed in the back seat of the patrol car. Clemons was seated in the front seat completing some paperwork concerning the arrest. About this time, Clemons commented that the female passenger (Haynes) would probably be arrested too, because the officers did not know who owned the guns. At that point, the defendant admitted ownership of all the firearms. Clemons then stopped the defendant from making any additional statements and immediately advised him of his *Miranda*[1] rights. Clemons asked Somerville if he understood his rights and if he still wanted to make that same statement. The defendant replied that he understood his rights and that he did.

## DISCUSSION

### The Discovery of the Weapons

The first issue on the motion is whether the stop of the vehicle the defendant was driving was proper. The defendant's counsel alleges that the stop was not premised on probable cause and therefore was unlawful. (Doc. 5 at ¶ 5). In response, the United States argues that the search was premised on the defendant's valid consent. In support of its position, the United States cites *Ohio v. Robinette*, 519 U.S. 33, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996). In *Robinette*, the defendant was stopped by a Sheriff's Deputy on Interstate 70 for speeding. The deputy asked the

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

defendant for his license. The deputy "ran" a computer check which indicated that the defendant

had no previous violations. The deputy then asked the defendant to step out of his car. The

defendant was issued a verbal warning and given his license. "At this point, [the deputy] asked,

'One question before you get gone: Are you carrying any illegal contraband in your car? Any

weapons of any kind, drugs, anything like that?'" The defendant responded "no" to these

questions. The deputy then asked if he could search the car. The defendant consented. The

deputy discovered a small amount of marijuana and, in a film container, a pill which was later

determined to be methylenedioxymethamphetamine. The defendant was arrested and charged

with knowing possession of a controlled substance. He moved to suppress the recovery of the

controlled substances. The United States Supreme Court stated the relevant issue is

"reasonableness" and that "[r]easonableness, . . ., is measured in objective terms by examining the

totality of the circumstances." *Id.* at 39-40.

> In *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973),
>
> the Supreme Court held that the voluntariness-of-consent analysis is conducted
> with reference to the totality of the circumstances and set forth a number of factors
> for a court to consider in conducting its inquiry: the person's youth, his lack of
> education, evidence of the person's low intelligence, the existence of advice as to
> the nature of the constitutional right implicated, the length of detention preceding
> the request to consent, the nature of prior questioning, the environment, and
> whether any physical punishment was involved. *Id.* at 226. We have said that to
> be considered voluntary, a consent to search "must be the product of an essentially
> free and unconstrained choice." *United States v. Garcia*, 890 F.2d 355, 360 (11[th]
> Cir. 1989).

*United States v. Zapata*, 180 F.3d 1237, 1241 (11th Cir. 1999).

The evidence adduced at the hearing[2] demonstrates that at the conclusion of the initial

---

[2] The court also has reviewed the two video tapes offered by the parties at the hearing. (Govt. Ex. 1 & 2).

stop, Ryan informed the defendant that he was not going to be ticketed and that they (the defendant and Haynes) could leave. Within a few seconds, Ryan asked Haynes and the defendant if they had any drugs, large amounts of currency, or guns in the vehicle. They stated that they did not. At that point, Ryan asked if he could search. Haynes immediately responded that he could. According to Ryan, the defendant also consented and nodded his head.[3] The defendant then assisted Officer Ryan in gaining access to the trunk due to the fact that the defendant did not have a key to access it. Thereafter, Clemons located the weapons in the luggage in the trunk.

Applying the foregoing criteria, the court finds that the consent was valid. The defendant was a 38-year-old individual who appeared to have no problem communicating with the officers.[4] The length of the stop prior to the consent was approximately 20 minutes. Officer Ryan's actions were professional and relaxed. This is particularly evident in the video from Ryan's car when the defendant and Haynes were helping him gain access to the trunk. There was no evidence presented that there were any threats or coercion used in an attempt to induce the consent.

Under the totality of the circumstances, the court finds that the defendant's consent was knowingly, intelligently, and voluntarily induced. The motion to suppress the seizure of the weapons is due to be denied.[5]

---

[3] Due to the circumstances surrounding the production of the video, including that it was dash mounted and the incident occurred on the noisy interstate while traffic was heavy, the video and audio are of limited use in resolving the present issues. The court does note, however, that nothing in the videos is inconsistent with the testimony of the officers. In fact, the video from the first patrol car demonstrates that the defendant's actions were very consistent with his having freely consented to the search as stated by Ryan.

[4] This is particularly evident in the second video from Officer Clemons' car.

[5] To the extent that the United States argued during the hearing that the consent of Haynes was sufficient to authorize the search, the court does not agree. Although Haynes consented to the search, there is no evidence she had any authority to consent. Nothing in the record demonstrates that she owned, leased, or rented the vehicle. The case of *United States v. Dunkley*, 911 F.2d 522 (11th Cir. 1990), *cert. denied*, 498 U.S. 1052, 111 S. Ct. 765, 112 L. Ed. 2d 785 (1991), cited by the United States, is factually distinguishable. The fact, however, that the defendant in the present case did not object to her statement consenting to the search, which was made in his presence, is evidence of the voluntariness of his consent.

**The Defendant's Statements**

The parties also agree that the defendant made three incriminating statements to the officers at or near the time of his arrest.[6] Clemons testified that while he was taking the defendant to the patrol car following discovery of the guns and his arrest, the defendant stated that he was "taking the guns to Birmingham." It is undisputed that this statement was not a consequence of any questioning. It was clearly a spontaneous statement by the defendant.

The United States Supreme Court in *Dickerson v. United States*, 530 U.S. 438, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000), reaffirmed the paramount role that *Miranda* rights have in the criminal justice system. Holding that *Miranda* warnings were constitutionally based and could not be overruled by legislation, the Court stated:

> In *Miranda*, we noted that the advent of modern custodial police interrogation brought with it an increased concern about confessions obtained by coercion. 384 U.S., at 445-458, 86 S. Ct. 1602. Because custodial police interrogation, by its very nature, isolates and pressures the individual, we stated that "[e]ven without employing brutality, the 'third degree' or [other] specific stratagems, . . . custodial interrogation exacts a heavy toll on individual liberty and trades on the weakness of individuals." *Id.*, at 455, 86 S. Ct. 1602. We concluded that the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be "accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself." *Id.*, at 439, 86 S. Ct. 1602. Accordingly, we laid down "concrete constitutional guidelines for law enforcement agencies and courts to follow." *Id.*, at 442, 86 S. Ct. 1602. Those guidelines established that the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with four warnings. These warnings (which have come to be known colloquially as "*Miranda* rights") are: a suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for

---

[6] As indicated earlier, prior to the search of the car, the defendant told Ryan that the luggage belonged to him. The defendant correctly does not challenge the admissibility of this statement because there is absolutely no evidence to support a conclusion that he was under arrest at that juncture. The statement clearly is admissible.

him prior to any questioning if he so desires." *Id.*, at 479, 86 S. Ct. 1602.

*Dickerson*, 530 U.S. at 434-35. In *Illinois v. Perkins*, 496 U.S. 292, 296, 110 S. Ct. 2394, 2397,

110 L. Ed. 2d 243 (1990), the Court stated:

> In *Miranda v. Arizona, supra*, the Court held that the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during "custodial interrogation" without a prior warning. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody. . . ." *Id.*, 384 U.S., at 444, 86 S. Ct., at 1612. The warning mandated by Miranda was meant to preserve the privilege during "incommunicado interrogation of individuals in a police-dominated atmosphere." *Id.*, at 445, 86 S. Ct., at 1612. That atmosphere is said to generate "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.*, at 467, 86 S. Ct., at 1624. "Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated." *Berkemer v. McCarty*, 468 U.S. 420, 437, 104 S. Ct. 3138, 3148, 82 L. Ed. 2d 317 (1984).

There are two elements that must exist before warnings are necessary. The defendant,

first, must be in custody and, second, must be interrogated. *United States v. Creech*, 52 F. Supp.

2d 1221, 1229 (D. Kan. 1998), *aff'd.*, 221 F.3d 1353 (10th Cir. 2000) (Table). The parties agree,

and the evidence clearly establishes, that the defendant was in custody at the time of the

statements. "Unsolicited, spontaneous and freely made" statements are generally excluded from

the *Miranda* requirements. *United States v. Savell*, 546 F.2d 43, 46 (5th Cir. 1977).

With regard to the first statement, the court has carefully examined the testimony and finds

that there is no evidence whatsoever that the defendant's statement was a consequence of any

interrogation or the equivalent thereof. In fact, the evidence demonstrates that the statement that

he was taking the guns to Birmingham was a spontaneous utterance by the defendant.

The dispute in this case really concerns the second statement made by the defendant in the

7

patrol car. It centers around whether the defendant's statement that the guns belonged to him were a consequence of interrogation. In *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689-90, 64 L. Ed. 2d 297 (1979), the Supreme Court defined interrogation as "express questioning" or "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." The issue focuses on the objective effect or perception by the suspect of the comment and not upon the intent of the officer. *Innis*, 446 U.S. at 301-02 & n.7.

In the present case, the court finds that Officer Clemons' comment that he also would have to arrest the female because they did not know to whom the guns belonged, was the kind of statement that is likely to elicit an incriminating response from an individual. Although arguments can be made that there is no nefarious, wanton, or wilful motive on the part of Officer Clemons in this matter, that is not required. Under the circumstances, the court finds that a reasonable person in Clemons' position should expect that such a comment would lead to an incriminating response. This is particularly true because Haynes was the defendant's girlfriend and she was pregnant. Additionally, the record demonstrates that the statement was directed at the defendant.[7] Therefore, the court finds that the motion is to be granted in this limited regard and the statement suppressed.

With regard to the third and last statement, affirming the second statement, which was made following the advice of rights and the defendant's acknowledgment that he understood the

---

[7] Clemons testified that he "told [the defendant] that we were going to arrest the female, also, because we didn't know whose guns they were."

8

same, the court finds that there was not sufficient attenuation to allow the use of the statement. The defendant argues that the United States should be precluded from using the statement because of its closeness to the giving of the second statement. The United States argues that it is due to be admitted because the defendant was given his *Miranda* rights, he clearly indicated his understanding of those rights, and he demonstrated a willingness to incriminate himself. (Doc. 18 at p. 6). The United States cites *Oregon v. Elstad*, 470 U.S. 298, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985), in support of its position.

In *Elstad*, the police went to the home of a young burglary suspect to take him into custody. Before the formal arrest and while the officers were inside the residence, one of them spoke with the defendant's mother, while the other one talked with the defendant during a "brief stop in the living room." *Elstad*, 470 U.S. at 315. The officer stated to the defendant that he felt that he was involved in a burglary. *Id.* at 301. The defendant acknowledged he had been at the scene. *Id.* Thereafter, the defendant was taken to the police station where he was advised of his *Miranda* warnings. He then made a full confession beyond what he had stated in the living room. *Id.* at 301, 314-15. The Supreme Court held that the second statement at the station house was admissible. *Id.* at 311-14. The Court stated that the pause in the living room "was not to interrogate the suspect but to notify his mother of the reason for his arrest," and that there was no evidence of coercion involved with the first statement. *Id.* at 315-16.

The Supreme Court in *Missouri v. Seibert*, ___ U.S. ___, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (June 28, 2004), again addressed the admissibility of "repeated" statements made after a post-arrest statement that preceded a *Miranda* warning. Specifically, in *Seibert*, the defendant was arrested on a murder charge after her 12-year-old son, who had cerebral palsy, died in his sleep.

9

Fearing that she would be charged with neglect because of bedsores on his body, she and two of her teenage sons and two of their friends devised a plan to conceal the facts surrounding his death by incinerating his body in the course of burning the family's mobile home. As a part of the scheme, they planned to leave Donald Rector, a mentally ill teenager living with the family, in the home to avoid any appearance that her son had been left unattended. One of the defendant's sons, Darian, and a friend set the fire, and Donald died. Five days after the fire, the police awakened the defendant at 3 a.m. at a hospital where Darian was being treated for burns to arrest her. In doing so, one of the arresting officers, following instructions from another police officer, refrained from giving her *Miranda* warnings. After the defendant was taken to the police station and left alone in an interview room for 15 to 20 minutes, she was questioned without being informed of her *Miranda* rights for approximately 30 to 40 minutes. During the interview, the officer squeezed her arm and repeated, "Donald was also to die in his sleep." *Seibert*, 124 S. Ct. at 2605. After the defendant acknowledged that she knew that Donald was meant to die in the fire, she was given a 20-minute coffee and cigarette break. The officer then again commenced the interview. He turned on a tape recorder, gave the defendant her *Miranda* warnings, and obtained a signed waiver of rights from her. He resumed the interview by asking her to acknowledge that they had been talking for a while about the fire. He then confronted her with her earlier admissions. She again acknowledged that Donald was "supposed to die in his sleep." *Id.*

The challenge in *Seibert* was whether a repeated confession derived from a police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until interrogation has produced a confession was permissible. *Seibert*, 124 S. Ct. at 2605-06. Finding the repeated statement inadmissible, the Court stated:

10

The contrast between *Elstad* and this case reveals [ ] a series of relevant facts that bear on whether *Miranda* warnings delivered midstream could be effective enough to accomplish their object: the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first. In *Elstad*, it was not unreasonable to see the occasion for questioning at the station house as presenting a markedly different experience from the short conversation at home; since a reasonable person in the suspect's shoes could have seen the station house questioning as a new and distinct experience, the *Miranda* warnings could have made sense as presenting a genuine choice whether to follow up on the earlier admission.

At the opposite extreme are the facts here, which by any objective measure reveal a police strategy adapted to undermine the *Miranda* warnings. [ ] The unwarned interrogation was conducted in the station house, and the questioning was systematic, exhaustive, and managed with psychological skill. When the police were finished there was little, if anything, of incriminating potential left unsaid. The warned phase of questioning proceeded after a pause of only 15 to 20 minutes, in the same place as the unwarned segment. When the same officer who had conducted the first phase recited the *Miranda* warnings, he said nothing to counter the probable misimpression that the advice that anything Seibert said could be used against her also applied to the details of the inculpatory statement previously elicited. In particular, the police did not advise that her prior statement could not be used. [ ] Nothing was said or done to dispel the oddity of warning about legal rights to silence and counsel right after the police had led her through a systematic interrogation, and any uncertainty on her part about a right to stop talking about matters previously discussed would only have been aggravated by the way Officer Hanrahan set the scene by saying "we've been talking for a little while about what happened on Wednesday the twelfth, haven't we?" [ ]. The impression that the further questioning was a mere continuation of the earlier questions and responses was fostered by references back to the confession already given. It would have been reasonable to regard the two sessions as parts of a continuum, in which it would have been unnatural to refuse to repeat at the second stage what had been said before. These circumstances must be seen as challenging the comprehensibility and efficacy of the *Miranda* warnings to the point that a reasonable person in the suspect's shoes would not have understood them to convey a message that she retained a choice about continuing to talk. [ ]

*Seibert*, 124 S. Ct. at 2612-13 (footnotes omitted).

Unfortunately, neither of the foregoing cases are factually dispositive. The facts in the

present case fall somewhere between *Elstad* and *Seibert*.  Applying the factors articulated in

*Seibert*, the court finds that the evidence is insufficient to show that the repeated statement by the

defendant in this case is sufficiently attenuated from the first.  Concerning the completeness and

detail of the questions and answers in the initial setting, the court finds that Officer Clemons did

not "interrogate" the defendant, but did make a statement that was likely to elicit an incriminating

response.  In fact, he testified that while he was sitting in the front seat of the patrol car, he told

the defendant that "we were going to arrest the female, also, because we didn't know whose guns

they were."  Concerning the second factor, the overlapping content of the two statements, the

court finds that the content is the same.  Clemons simply asked the defendant following the brief

interlude if he wanted to make the same statement.  Concerning the third factor, the timing and

setting of the first and the second statements, the undisputed record is clear that the repeated

statement was made immediately after the first statement and the intervening administration of the

*Miranda* rights.[8]  Concerning the fourth factor, the continuity of police personnel, it again is

undisputed that Officer Clemons was the only individual involved in talking with the defendant

subsequent to his placement in the patrol car.  Concerning the fifth factor, the degree to which the

interrogator's questions treated the second round of inquiry as continuous with the first, it is clear

that Clemons continuation of the exchange with the defendant made it appear that one flowed

from the other.  Although he punctuated the two statements with a *Miranda* warning, the court has

the same concern that was voiced in *Seibert* - - that there was no distinct effort to differentiate

between the initial statement and the adoption of the same after the *Miranda* warning.  *Seibert*,

---

[8] In reaching its determination in this matter, the court also notes that Officer Clemons never articulated which of the specific *Miranda* rights he informed the defendant.  He merely stated that he informed him of his *Miranda* rights.  Whether he properly informed the defendant of his constitutional rights is unclear from the record.

124 S. Ct. at 2613.

The pertinent issue at this juncture is whether a reasonable person in the defendant's situation would appreciate after the belated warning that he retained a choice about continuing to talk. *Id.* Premised on the present record, the court finds that the United States has not met the requisite standard. The motion to suppress is due to be granted to the extent it seeks exclusion of the third statement.[9]

## CONCLUSION

Premised on the foregoing, it is hereby **RECOMMENDED** that the defendant's motion to suppress the evidence and any statements made subsequent to his arrest (doc. 5) be granted in part and denied in part. Accordingly, the court recommends that the United States be permitted to use the seized evidence and the first statement, but not the second and third.

Either party may file specific written objections to this report and recommendation within ten (10) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendation contained in this report and recommendation shall bar an aggrieved party from attacking the factual findings on appeal. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon opposing counsel.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the counsel for the United States and upon counsel for the defendant.

---

[9] Because there is no evidence of coercion, the statements may be use for impeachment purposes.

13

DONE, this the 22nd day of October, 2004.

JOHN E. OTT
United States Magistrate Judge

14

**Exhibit C**

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

FLOYD SOMERVILLE, JR.,    )
    )
    APPELLANT,    )
    )
VS.    )    Appeal Number 05-120-89-H
    )    (N. D. ALABAMA # CR-04-
UNITED STATES OF AMERICA, )    04-CO-0301-LSC-JEO)
    )
    APPELLEE,    )

## AFFIDAVIT OF TERRY COLBERT

**BEFORE ME**, the undersigned authority in and for said County and State personally appeared **TERRY COLBERT**, who is known to me, and who, after being first sworn, deposed and said the following:

My name is **TERRY COLBERT** and I am over the age of 21 years and am fully competent to give this affidavit. I reside at 1504 19th St., Northport, Alabama 35476.

I am aware that Floyd Somerville, Jr., has been convicted of possession of four guns that were in a vehicle driven by him on July 8, 2004. This affidavit is given at the request of counsel for Floyd Somerville, Jr., in lieu of trial testimony.

I purchased two of the guns during a stay of Floyd Somerville, Jr., in Northport, Alabama, just before he was to return to New York. The two guns that I purchased were the Highpoint automatic .380 pistol bearing serial number P774637 and Highpoint automatic .40 pistol bearing serial number X711155. I have receipts for the purchase of these items in my possession dated July 6, 2004.

I was never contacted by trial counsel to obtain information on these items and was not interviewed by anyone regarding how these items got in the vehicle driven by Floyd Somerville, Jr., on July 8, 2004.

When I purchased two guns I placed them in the trunk of the 1996, Dodge automobile while we completed our visits with mutual friends and their relatives.

On the night of July 7, 2004, we hung out until late that night and I went home to bed after we planned to meet the next day. I did not remove the guns from the car that night because I forgot they were in the trunk of the Dodge.

I called Somerville about 10:00 a. m. and he stated that he was on the road (driving back to New York). I planned to get the guns the next morning, however, Floyd Somerville, Jr., left early the next morning. I did not get a chance to get the guns of the vehicle.

I did not see any guns in the vehicle when I placed my guns in the vehicle's trunk.

I do not believe that Floyd Somerville, Jr., knew, at the time that he was driving to New Your, that the guns were in the trunk of the vehicle driven by him.

SWORN TO and subscribed this 19th day of December 2004.

**TERRY COLBERT, JR.**

**STATE OF ALABAMA        )**
**TUSCALOOSA COUNTY     )**

**Sworn to and subscribed this 19th day of December 2005.**

**Notary    Public,    State    and**
**County, At Large**
My Commission Expires:
*June 17, 2009*

#7356 Floyd Somerville Affidavit of Terry Colbert 121905

# United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

May 18, 2006

MEMORANDUM TO COUNSEL OR PARTIES

**Appeal Number: 05-12089-HH**
Case Style: USA v. Floyd Somerville
District Court Number:  04-00301  CR-2-LSC-JEO ()

Enclosed is a copy of the court's decision filed today in this appeal.  Judgment has this day been entered pursuant to Rule 36 of the Federal Rules of Appellate Procedure.  Fed.R.App.P. 39, 40 and 41, and the corresponding circuit rules govern costs and attorney's fees, petitions for rehearing, and mandate, respectively.

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2.  Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or rehearing en banc is timely only if received in the clerk's office within the time specified in the rules.  The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed <u>by any party</u> in the appeal.  <u>See</u> 11th Cir. R. 26.1-1.  In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc.  <u>See</u> 11th Cir. R. 35-6(k) and 40-1.

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal <u>no later than</u> 60 days after either issuance of mandate *or* filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

For questions concerning the issuance of this court's decision, please call the "Reply To" number shown below. For all other questions, please call Caruso, Joe (404) 335-6177.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: Nancy Gilman (404) 335-6151

Encl.

OPIN-1 (01-2006)